IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-83-BO

| | |
|---|---|
| SIKANDER NURUDDIN ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| CARMAX, INC., and ) | |
| WELLS FARGO BANK, N.A., ) | |
| Defendants. ) | |

This cause comes before the Court on defendants' CarMax Auto Superstores, Inc. ("CarMax"), and Wells Fargo Bank, N.A. ("Wells Fargo") motions to dismiss plaintiff Sikander Nuruddin's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 9, 12]. The appropriate responses have been filed. [DE 18, 19]. In this posture, the matters are ripe for ruling. For the reasons discussed herein, both defendants' Rule 12(b)(6) motions to dismiss are granted. [DE 9, 12].

BACKGROUND

On or around January 3, 2024, plaintiff initiated the instant civil action by filing a complaint against defendants CarMax and Wells Fargo in the Superior Court of Wake County, North Carolina. [DE 1-1]. Plaintiff's complaint contains various allegations against defendants including (1) breach of contract, (2) negligence, (3) unfair and deceptive trade practices, and (4) an invasion of privacy. [DE 1-1, 9, 12].

On February 12, 2024, defendant Wells Fargo, with defendant CarMax's consent, filed a motion to remove plaintiff's civil suit from the Superior Court of Wake County to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1332, 1441, and

1446. [DE 1]. Thereafter, on March 8, 2024, defendant CarMax filed a motion to dismiss plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 9]. On March 11, 2024, defendant Wells Fargo also filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 12]. On March 25, 2024, plaintiff filed oppositions to both CarMax and Wells Fargo's dismissal motions, [DE 18, 19], along with a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, [DE 20]. Defendants responded in opposition to plaintiff's motion for summary judgment, [DE 24, 25], and plaintiff replied, [DE 26, 27]. For the reasons discussed herein, the Court will grant defendants' motions for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 9, 12].

## DISCUSSION

A Rule 12(b)(6) motion to dismiss focuses on the pleading requirements under the Federal Rules. "Rule 8(a)(2) requires only a short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (internal quotation marks and citations omitted). Although a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion to dismiss, the complaint must show an entitlement to relief through more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See, e.g., Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020). The "[f]actual allegations must be enough to raise a right to relief about the speculative level." *Twombly*, 550 U.S. at 555. Put differently, "[the] complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570).

Because federal jurisdiction here rest on diversity, the Court looks to North Carolina law to determine the governing substantive law. [DE 1]. *See Klaxon Co. v. Stentor Elc. Mfg.*, 313 U.S. 487, 496-97 (1941); *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 67 F.4th 648, 653 (4th Cir. 2023). The parties do not dispute that under North Carolina's choice of law rules, North Carolina law governs. [DE 1]. Thus, the Court's analysis ends here. *See Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019).

*A. Breach of Contract Claim.*

To state a claim for breach of contract under North Carolina law, plaintiff must demonstrate (1) the existence of a valid contract and (2) a breach of the terms of the contract. *Parker v. Glosson*, 641 S.E.2d 735, 737 (N.C. App. 2007). When a valid contract exists, courts must necessarily look to the language of the contract terms to determine whether a breach has occurred. *See Ussery v. Branch Banking & Trust Co.*, 777 S.E.2d 272, 279 (N.C. 2015) (explaining how "the purport of a written instrument is to be gathered from its four corners") (citations and quotations omitted). If "the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Harper v. Vohra Wound Physicians of NY, PLLC*, 841 S.E.2d 580, 583-84 (N.C. App. 2020) (quotations and citations omitted). If, however, the terms of the contract are "ambiguous, interpretation of the contract is a matter for the jury." *Harper*, 841 S.E.2d at 583-84 (quotations and citations omitted). Contractual terms are ambiguous "'when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations.'"

3

*Harper*, 841 S.E.2d at 583-84 (quoting *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 748 (N.C. 2012)). "'Stated differently, a contract is ambiguous when the writing leaves it uncertain as to what the agreement was.'" *Harper*, 841 S.E.2d at 583-84 (quoting *Salvaggio v. New Breed Transfer Corp.*, 564 S.E.2d 641, 643 (N.C. App. 2002)).

Before this Court, the parties do not dispute the existence of a valid contract. [DE 9, 12, 18, 19]. Accordingly, the remaining question is whether plaintiff has sufficiently plead that either CarMax or Wells Fargo breached the terms of their respective contracts. *See Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570); *see also Parker*, 641 S.E.2d at 737.

In his initial complaint and subsequent filings, plaintiff contends that CarMax breached their contract with plaintiff when they provided plaintiff with a bank draft in lieu of a regular check. [DE 1, 18]. Critically, however, the Vehicle Purchase Agreement established between CarMax and plaintiff negates plaintiff's claim. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining how a court may consider documents that are "attached to the motion to dismiss, so long as they are integral to the complaint and authentic"). On its face, the Vehicle Purchase Agreement notifies plaintiff that CarMax may pay plaintiff in the form of "a bank draft." [DE 11-1 at 2]. Thus, because the language of the Vehicle Purchase Agreement "clear[ly] and unambiguous[ly]" permits payment in the form of a bank draft, [DE 11-1], and CarMax paid plaintiff via a bank draft, [DE 11-2], plaintiff has failed to allege that CarMax breached its contractual obligations. *Harper*, 841 S.E.2d at 583-84.

As to Wells Fargo, plaintiff contends that Wells Fargo improperly held the funds from bank draft. [DE 1-1, 19]. However, the Deposit Account Agreement established between Wells Fargo and plaintiff does not require Wells Fargo to make deposits available immediately; indeed, the Deposit Account Agreement explicitly informs plaintiff of circumstances when Wells Fargo may

4

hold deposits. [DE 13; 13-1]. Further, plaintiff overlooks the language within the Vehicle Purchase Agreement informing him that the bank draft "may be held by" his bank. [DE 11-1 at 2]. As such, the record evidence "negates," rather than supports, plaintiff's claims against Wells Fargo. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Because both the Vehicle Purchase Agreement and Deposit Account Agreement contradicts plaintiff's allegations against both CarMax and Wells Fargo, [DE 11-1, 13-1], the Court concludes that plaintiff has failed to sufficiently plead a breach of contract claim against either Wells Fargo or CarMax. *See Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). Consequently, the Court will grant both CarMax's and Wells Fargo's Rule 12(b)(6) motion to dismiss plaintiff's claims for breach of contract. [DE 9, 12]. *See Goines*, 822 F.3d at 166 ("[D]ismissal is appropriate if the document negates the claim.").

*B. Negligence Claims.*

"To withstand a [Rule 12(b)(6)] motion to dismiss, plaintiff's negligence claims must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Sterner v. Penn*, 583 S.E.2d 670, 673 (N.C. App. 2003) (internal quotation marks omitted). When reviewing a negligence claim, the Court must first determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff, because "[i]f no duty exists, there logically can be neither breach of duty nor liability." *Synovus Bank v. Coleman*, 887 F.Supp.2d 659, 672 (W.D.N.C. 2012) (quoting *Harris v. Daimler Chrysler Corp.*, 638 S.E.2d 260, 265 (N.C. App. 2006)). Thus, the Court will begin – and end – with an analysis of defendants' alleged duty.

5

In his complaint, plaintiff does not explain the type of relationship he maintains with either CarMax or Wells Fargo for purposes of his negligence claims. [DE 1]. Nonetheless, considering plaintiff's *pro se* status and the Court's obligation to construe plaintiff's complaint liberally, the Court will analyze the obligations – if any – that defendants have to plaintiff in a fiduciary relationship. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal proceedings drafted by lawyers."); *but see Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (a court is not required to "discern the unexpressed intent of the plaintiff").

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 548 S.E.2d 704, 707 (N.C. 2001). While North Carolina courts have been hesitant to specifically define the term "fiduciary relationship," the North Carolina Supreme Court broadly defines such a relationship as one "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F.Supp.2d 386, 404 (M.D.N.C. 2002) (quoting *Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931)). In general, North Carolina recognizes "two types of fiduciary relationships: (1) those that arise from 'legal relations such as attorney and client, broker and client, principal and agent, trustee and *cestui que* trust,' and (2) those that exist 'as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.'" *Rhone-Poulenc*, 73 F.Supp.2d at 546 (quoting *Abbitt*, 160 S.E. at 906) (cleaned up). Notably, "general contractual relationships do not [however,] typically rise to the level of fiduciary relationships." *Sykes v. Health Network Sols., Inc.*, 828 S.E.2d 467, 476 (N.C. 2019); *see also id.* ("[T]ypical contractual relationships do not give rise to the special status of a fiduciary relationship."); *Branch*

*Banking & Tr. Co. v. Thompson*, 418 S.E.2d 694, 699 (N.C. App. 1992) (explaining how "parties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract").

Before this Court, plaintiff has failed to adequately plead a breach-of-fiduciary-duty claim. [DE 1-1]. Plaintiff appears to allege that both CarMax and Wells Fargo owed him a fiduciary duty due to their transactional relationship. [DE 1, 18, 19]. But such an allegation mistakenly "seeks to establish a fiduciary relationship arising out of the operation of a general business relationship." *Sykes*, 828 S.E.2d at 476. According to the facts alleged in plaintiff's complaint, any relationship between the parties – and subsequent allegations – is solely based on the parties' contracts with one another. *See* [DE 1-1]; *see also* [DE 18, 19]. Thus, because plaintiff's relationship with both CarMax and Wells Fargo is nothing more than a "contractual relationship," it "is insufficient to establish a fiduciary relationship." *Sykes*, 828 S.E.2d at 477. As a result, the Court will grant defendants Car Max's and Wells Fargo's Rule 12(b)(6) motions to dismiss plaintiff's negligence claims. [DE 9, 12].

*C. Unfair and Deceptive Trade Practices.*

"To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 63 (N.C. Ct. App. (1998)). "A trade practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* (citation omitted). Whereas a trade practice is deceptive when it has "the tendency or capacity to mislead, or create the likelihood of deception." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996) (alterations and citation omitted).

7

In his complaint, plaintiff appears to contend that CarMax and Wells Fargo committed a deceptive practice by entering into a prearranged agreement in which Wells Fargo held plaintiff's bank draft for an extended period. [DE 1-1, 18, 19]. According to plaintiff, this arrangement enabled both Wells Fargo and CarMax to benefit from the bank draft funds. [DE 1-1, 18, 19]. Plaintiff's allegations are, however, void of any factual support. Indeed, the parties indicate – and plaintiff does not dispute – that plaintiff ultimately received access to the bank draft. [DE 9, 12, 18, 19]. Further, the Vehicle Purchase Agreement explicitly informs plaintiff that the funds CarMax provides to him may be held by the bank for a limited period. [DE 11-1]. And the Deposit Account Agreement established between Wells Fargo and plaintiff does not require Wells Fargo to make deposits available immediately. [DE 13-1]. Most important, however, is that the communication provided between plaintiff and Wells Fargo indicates that Wells Fargo was responsive to plaintiff's inquiries. [DE 12, 13, 19]. Because the foregoing evidence contradicts plaintiff's allegations, the Court concludes that plaintiff has failed to state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). Consequently, the Court will grant defendants' motions to dismiss plaintiff's unfair and deceptive trade claims pursuant to Rule 12(b)(6). [DE 9, 12].

D. *Invasion of Privacy.*

Turning to plaintiff's claim of invasion of privacy. "North Carolina does not recognize a cause of action for the invasion of privacy by disclosure of private facts." *Burgess v. Busby*, 544 S.E.2d 4, 11 (N.C. 2001); *see Hall v. Post*, 372 S.E.2d 711, 717 (N.C. 1988). Thus, the Court construes the complaint to assert an invasion of privacy by intrusion upon seclusion claim. *See Miller v. Brooks*, 472 S.E.2d 350, 354 (N.C. 1996). North Carolina courts have held that such an intrusion, "consists of an intentional physical or sensory interference with, or prying into, a

8

person's solitude or seclusion or his private affairs." *Burgess v. Busby*, 544 S.E.2d 4, 11 (N.C. 2001). Additionally, the intrusion must be "highly offensive to a reasonable person." *Id.*

*Miller* and subsequent cases have outlined the boundaries of what constitutes intrusion upon seclusion in North Carolina. *Miller*, 472 S.E.2d at 352-53. For example, in *Toomer v. Garrett*, the plaintiff, a former federal and state employee, sufficiently plead an invasion of privacy claim where his personnel file had been released to various news media and the public as retaliation from his employer. 574 S.E.2d 76, 90 (N.C. App. 2002). In contrast, North Carolina courts have concluded that no claim for invasion of privacy exists when a newspaper based a story on public records in which plaintiff had no expectation of privacy. *See Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 27-28 (N.C. App. 2003).

In the instant matter, plaintiff has failed to plead a plausible claim for invasion of privacy by intrusion upon seclusion. [DE 1-1, 18, 19]. Indeed, plaintiff has provided no factual basis to support this claim. Consequently, the Court will grant defendants' Rule 12(b)(6) motions to dismiss plaintiff's claim for invasion of privacy for failure to state a claim. [DE 9, 12].[1]

## CONCLUSION

For the reasons discussed herein, the Court concludes that plaintiff has failed to state a claim for relief against both CarMax and Wells Fargo. Consequently, the Court GRANTS both defendants' Rule 12(b)(6) motions to dismiss pursuant. [DE 9, 12]. Plaintiff's complaint against both CarMax and Wells Fargo is therefore DISMISSED. [DE 1, 1-1]. Accordingly, both plaintiff's

---

[1] In reaching this conclusion, the Court relies on the claims discerned from a liberal reading of plaintiff's complaint. *See Estelle*, 429 U.S. at 106; *but see Williams*, 716 F.3d at 805. In doing so, the Court recognizes that plaintiff attempts to bring forth various, additional claims in his responses to defendants' motions to dismiss. [DE 18, 19]. However, because these newly minted claims are not discernable from plaintiff's initial complaint, and plaintiff did not file an amended complaint pursuant to Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure, the Court restricts its decision to the claims presented in plaintiff's initial complaint. [DE 1-1].

9

motion for summary judgment [DE 20] and defendant CarMax's motion to stay plaintiff's motion [DE 21] are DENIED as moot.

SO ORDERED, this 29 day of October 2024.

_TERRENCE W. BOYLE_
UNITED STATES DISTRICT JUDGE